# 98 DTA 217

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ

EL PUEBLO DE PUERTO RICO
Peticionario

v.

HECTOR ROSA RAMIREZ
Recurrido

Núm. KLCE-98-00099

San Juan, Puerto Rico, a 21 de agosto de 1998

Panel integrado por su Presidente, el Juez Rossy García
y los Jueces Martínez Torres y Rodríguez García

Rodríguez García, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Comparece Héctor Rosa Ramírez, ante nos, para que revisemos una Resolución emitida, en 9 de enero de 1998, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, y notificada en corte abierta al peticionario en 16 de enero de 1998. En dicha Resolución, el Tribunal declaró NO HA LUGAR una Moción de Desestimación y una Moción de Supresión de Evidencia presentada por Héctor Rosa Ramírez. Inconforme con dicho dictamen, Héctor Rosa Ramírez interpuso una petición de *certiorari*, ante el Tribunal de Circuito de Apelaciones, en 12 de febrero de 1998.

Resolvemos, por los fundamentos que se exponen a continuación, que resulta procedente denegar la expedición del auto solicitado.

## I. Trasfondo Fáctico

En 23 de diciembre de 1996, se determinó causa probable para arrestar a Héctor Rosa Ramírez, (en adelante *"Héctor"),* por la infracción el artículo 401 de la Ley de Sustancias Controladas consistente en la posesión con intención de distribuir heroína y cocaína sin estar legalmente autorizado para ello. Los hechos que producen la denuncia ocurrieron el día 5 de diciembre de 1996, a la 7:30 a.m., en Aguadilla. ██ Según la declaración jurada del agente investigador que intervino en el caso, Luis A. Muñoz Martínez, los hechos son los siguientes: ██

*"...Que a través de los binoculares, a una distancia de 70-80 pies pude observar que frente a un colmado de madera y zinc, había dos individuos; uno de ellos Héctor Rosa Ramírez C/P Pitirre, a quien conozco, que vestía un pantalón verde y jacket azul marino, con emblema de Nike y gorra azul y tennis negro y el otro trigueño, delgado, estatura mediana, cabello negro, corte rapero, con*

*vestimenta de una sudadera negra, con jacket de rayas blancas y verdes, tennis negros. Que dicha información se iba transmitiendo a través del portátil a mi supervisor y compañeros que se encontraban en el Sector La Vía. Que luego de varios minutos, observó que por la acera de la calle Nueva se acercó a este Colmado un individuo que describo como trigueño, de estatura mediana, de 108 libras apróximadamente, que vestía un pantalón mahón y sweter de mangas largas, azul, con diseño de cuadritos blacos[sic], con gorro azul y blanco y varias cadenas plateadas y se acercó y conversó con C/P Pitirre y quien sacó del bolsillo derecho del jacket una bolsa plástica transparente mediana de 4 por 6 apróximadamente, conteniendo en su interior un polvo de supuesta cocaína y otras envolturas obscuras y se lo entregó al individuo de sweter de mangas largas y éste subió por el callejón por La Vía y trasmitió la información y observó cuando baja corriendo un individuo trigueño, cabello negro y mahones y camisa larga, color brown y observó cuando C/P Pitirre sacó de debajo del jacket azul marino un paquete rectangular envuelto en papel de estraza y cinta adhesiva color azul, en forma y manera de un kilo de supuesta cocaína y se le entregó al individuo de la sudadera color negra y éste abrió el jacket y lo guardó dentro del mismo y caminaron ligeramente. Continúo transmitiendo la información y observó a los compañeros bajando por el callejón y corriendo por la calle Nueva y me entero que estas personas fueron detenidas. Luego, pasamos a la División de Drogas y Vicios de Aguadilla, donde estas personas resultaron ser Héctor Rosa Ramírez C/P Pitirre, Miguel Narvaez Osorio a quien identifiqué como la persona que recibió la bolsa plástica con polvo blanco de supuesta cocaína del C/P Pitirre y un menor E.V.R.. El agente Natalio O. Mejías Feliciano 16046, realizó la prueba de campo a la evidencia ocupada, dando positivo a Cocaína y Heroína. Consulté con el Hon. Juan Reguero Méndez, fiscal de Aguadilla, quien ordenó radicar dos artículos 401 de la Ley de Sustancias Controladas, a cada uno de los adultos, en común y mutuo acuerdo y que se confiscara el dinero ocupado en el paquete de estraza... Hago constar que estos casos fueron sometidos en compañía de los Agentes Élmer Martínez Rivera 13810, Frankie López Rivera 12244 y Angel Ríos Rivera 18596, quienes realizaron dichos arrestos mediante los motivos fundados trasmitidos por este suscribiente."*

Esta declaración jurada fue suscrita en 10 de diciembre de 1996. En 12 de agosto de 1997, se celebró la Vista Preliminar, y escuchada la prueba, el Juez Víctor M. De Jesús González determinó que existía causa probable para acusar a Héctor de infracción al artículo 401 de la Ley de Sustancias Controladas. ■ Héctor presentó una *"Moción de Desestimación al Amparo de la Regla 64(p) de las de Procedimiento Criminal y el Debido Proceso de Ley"*, en 23 de septiembre de 1997. En dicha Moción el peticionario alega, en síntesis, que el agente investigador no presentó su declaración jurada de los hechos dentro del término de las 120 horas que exige el artículo 523 de la Ley de Sustancias Controladas y que éste no tenía motivos fundados para intervenir con él. Además, señala que el testimonio presentado por el agente es uno estereotipado y que no se le ocupó ningún material delictivo en su persona. ■ A su vez, el Ministerio Público presentó una Moción en Oposición a la Moción de Desestimación presentada por Héctor. ■ En 12 de noviembre de 1997, Héctor presentó una Réplica a la Moción de Oposición. ■ También, en 13 de enero de 1998, Héctor presentó una Moción aduciendo que: *"...en atención a que el Ministerio Público no objeta ni refuta el resumen de la prueba ofrecido por la defensa como la prueba desfilada en Vista Preliminar se solicita a este Honorable Tribunal que acepte el resumen antes mencionado como la prueba desfilada por el Ministerio Público en la Vista Preliminar y se proceda a resolver los planteamientos de Derecho expuesto por la defensa."* ■

Así las cosas, en 16 de enero de 1998, llamado el caso en contra de Héctor para juicio en su fondo la defensa informó al Tribunal que había presentado una Moción al amparo de la Regla 64(p) y la Regla 234 de Procedimiento Criminal, y alegó que desconocía si el Tribunal las había resuelto. El Juez le informó que el Tribunal las había declarado No Ha Lugar, por lo que la defensa solicitó que se le entregase una copia de la Resolución y que se *"quede pendiente para verse"* la Moción presentada en torno a la Regla 234 de Procedimiento Criminal. El Tribunal declaró con lugar ambas solicitudes y señaló el caso para Vista de Supresión, en 28 de marzo de 1998. ■

De la Resolución emitida en 9 de enero de 1998 por el Tribunal de Primera Instancia, en la que declaró No Ha Lugar las mociones presentadas por la defensa, es que viene Héctor ante este Tribunal de Apelaciones con una petición de *certiorari*. En su escrito, el peticionario alega que:

*"1. Cometió error el Tribunal de Primera Instancia al denegar la moción de desestimación bajo*

*las disposiciones de la Regla 64(p) de Procedimiento Criminal y el debido procedimiento de ley.*

*2. Las acusaciones presentadas contra el peticionario son contrarias a derecho toda vez que de la prueba desfilada en vista preliminar estableció la inexistencia de motivos fundados para la intervención policial y tampoco estableció en modo alguno que la evidencia delictiva presentada estuviera relacionada con el peticionario.*

*3. Incidió la Sala del Tribunal de Primera Instancia al no descartar la declaración del agente Muñoz Martínez como consecuencia de su omisión injustificada de presentar la declaración jurada en el término reglamentario."*

## II. Derecho Aplicable

### A. El Agente Encubierto.

Comenzaremos por resolver el tercer señalamiento de error que presenta el peticionario: ¿Incidió el Tribunal de Primera Instancia al no descartar la declaración del agente Muñoz Martínez? Veamos:

Debemos, en primer lugar, definir qué es un agente encubierto. La jurisprudencia ha mantenido silencio en cuanto a esto, por lo que hemos recurrido a fuentes secundarias. El diccionario Black's Law Dictionary, define un agente encubierto como:

*"Undercover agent. A person who works as an agent without disclosing his role as an agent. In police work, one who makes contact with suspected criminals without disclosing his role as an agent of the police. He gathers evidence of criminal activity which may later be used at trial.*

*Such agents are commonly used in narcotic investigations."* Henry Cambell Black, *Black's Law Dictionary* 1526 (6ta. Ed. 1990).

A su vez, este Tribunal de Circuito de Apelaciones en una Resolución, ■ emitida en 3 de diciembre de 1996, define al agente encubierto de la siguiente manera:

*"Como se sabe, un agente encubierto es un miembro de la policía que interactúa con las diversas personas involucradas en actividades delictivas de difícil esclarecimiento pero encubriendo u ocultando su verdadera identidad de agente de orden público. Aunque se presenta y se muestra al descubierto ante tales personas, su efectividad como instrumento de la investigación criminal estriba precisamente en el desconocimiento que tienen los sospechosos de quien aparenta ser un compañero de faenas delictivas es, en verdad, un agente de la policía. Su intervención con los infractores de la ley puede prolongarse por largos períodos de tiempo y aunque intervenga o participe en actos delictivos, no procede el arresto inmediato de los sospechosos ni solicita órdenes de arrestos al instante pues ésta no es su función hasta tanto finalice su labor investigativa. Por tal razón, él no somete los casos uno a uno, según éstos van originándose, sino que los acumula para una sola ocasión al finalizar su investigación. Es entonces cuando se somete simultáneamente la prueba de todos los casos investigados ante un magistrado para que se expidan las correspondientes órdenes de arresto. Véase a Pueblo v. Suárez González, Núm. KLCE-96-01106."*

Nuestro Tribunal Supremo ha reconocido que los agentes encubiertos son necesarios para la investigación de ciertos delitos cuya característica común es la clandestinidad. *Pueblo v. Carballosa Vázquez*, ___ D.P.R. ___ (1992), **92 J.T.S. 84**, a la pág. 9634; *Pueblo v. Soto Zaragoza*, 94 D.P.R. 350, 352 (1967). Estos agentes han jugado un papel importante en las investigaciones de los delitos relacionados con la venta de drogas y sustancias controladas, entre otros. Para salvaguardar los derechos de aquellas personas que se puedan ver envueltas en la comisión de unos de estos delitos y evitar la fabricación de casos por agentes sin escrúpulos, *Pueblo v. Vega Troncoso*, 115 D.P.R. 30, 32 (1983), la Legislatura stableció la sección 2523. Dicha sección dispone que *"[t]odo personal de investigaciones que intervenga o participe como encubierto en una transacción de ventas de drogas y sustancias controladas"* debe prestar, ante un fiscal, una declaración jurada sobre la transacción y su participación en ella dentro de las 120 horas siguientes a la transacción. Si se demostrase que dicha declaración no se prestó dentro de este término, ni la declaración jurada ni el testimonio del agente

encubierto podrán ser utilizado en el juicio, a menos que se pruebe que existió justa causa para la demora. 24 L.P.R.A. sec. 2523.

Como claramente se ha expuesto, el agente encubierto es aquel que se introduce clandestinamente en el bajo mundo sin descubrirse a sí mismo como un agente encubierto.

*"En cambio, no sucede lo mismo con ningún otro policía que ejerza funciones de agente investigador no cubiertas. La labor de un agente de drogas que no es agente encubierto no está revestida de la necesidad de preservar el secreto de su verdadera identidad de policía por períodos largos de tiempo. Un agente investigador de la División de Drogas no oculta su verdadera identidad de policía pues su función no es realizar personalmente transacciones de drogas con los sospechosos sino patrullar desde lugares estratégicos en que no pueda ser visto. Cuando, como en este caso, él realiza vigilancias confidenciales, su efectividad no depende de que no sepa su verdadera identidad sino de que no sepa que él esta observando la actividad delictiva desde los alrededores. Lo que define a un agente encubierto no es el entorno del lugar escogido de trabajo sino el carácter simulado de su identidad. No es su ubicación en algún escondite utilizado para llevar a cabo su vigilancia lo que hace de un miembro de la Policía sea un agente encubierto para fines de la ley en cuestión. El agente encubierto "simula" que no es policía, el agente investigador ordinario "disimula lo que es." Véase a Pueblo v. Suárez González, supra.*

*El único agente de la policía o de investigación que está obligado a prestar una declaración jurada dentro de las 120 horas, desde la transacción, es el agente encubierto. En el caso de autos, el agente Luis A. Muñoz Martínez no es un agente encubierto. Este no formó parte de la transacción de venta de drogas que da margen a este caso. Al contrario, él desde un lugar estratégico observó como se llevaba a cabo una transacción de drogas. Ante estos hechos el agente Muñoz Martínez no tenía que prestar una declaración jurada dentro de las 120 horas siguientes a la transacción."*

### B. Motivos Fundados y Vista Preliminar

Discutiremos los demás señalamientos de error conjuntamente por estar relacionados entre sí.

La Regla 11(a) de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11, permite que un funcionario del orden público pueda realizar un arresto, sin la orden correspondiente, si éste tuviese motivos fundados para creer que una persona ha cometido un delito en su presencia. *Pueblo v. Lafontaine Alvarez,* 98 D.P.R. 75, 81 (1969). Nuestro Tribunal Supremo ha definido el concepto de *"motivos fundados"* como *"aquella posesión de información y conocimiento que lleven a una persona ordinaria y prudente a pesar que el arrestado ha cometido un delito". Pueblo v. Castro Santiago,* 123 D.P.R. 894, 899 (1989); *Pueblo v. Lafontaine Alvarez, supra.* Bajo la premisa de la Regla 11 no es necesario que se haya cometido el delito; es suficiente que el funcionario tenga motivos fundados para creer que éste se ha cometido en su presencia. *Pueblo v. Lafontaine Alvarez, supra.* Este concepto de motivos fundados es aplicable a todos los agentes de la policía que de forma coordinada y concertadamente persigan el crimen. El conocimiento de cada uno de los agentes es atribuible a los demás, siempre y cuando el agente que comenzó *"la cadena de comunicaciones tenga información de primera mano." Pueblo v. Luzón,* 113 D.P.R. 315, 324 (1982). A base de lo anteriormente expuesto, y los hechos particulares de este caso, en adición de la experiencia policíaca del agente Muñoz Martínez, éste tenía motivos fundados para intervenir con el peticionario.

*"La existencia de "motivos fundados" para el arresto sin orden de magistrado es el resultado de una rápida evaluación de circunstancias, en la cual el oficial de policía llega a la conclusión de que la persona ha cometido un delito en su presencia. Para así concluir el agente debe relacionar el comportamiento de la persona frente a él con los hábitos de conducta y manera de actuar de infractores de la Ley en circunstancias similares." Pueblo v. Pacheco Báez,* \_\_\_ D.P.R. \_\_\_ (1992), **92 J.T.S. 69,** a la pág. 9559.

La Regla 23 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R, 23, ordena la celebración de una vista preliminar en todo caso en que se acusare a una persona de someter un delito grave. *"La función básica de esta vista está limitada a la determinación de existencia o no de causa probable para creer que se ha cometido un delito y que el mismo ha sido cometido por el acusado."* El

propósito de la celebración de esta vista es *"evitar que se someta a un ciudadano arbitraria e injustificadamente a los rigores de un proceso criminal"*. *Pueblo v. Andaluz Méndez,* ___ D.P.R. ___ (1997), **97 J.T.S. 107**, a la pág. 1293; *Pueblo v. Vallone,* ___ D.P.R. ___ (1993), **93 J.T.S 79**, a la pág. 10730. Esto teniendo en cuenta que en la vista preliminar no se determina la culpabilidad o inocencia del imputado, porque esta vista no es un *"mini-juicio"*. *El Vocero v. E.L.A.,* ___ D.P.R. ___ (1992), **92 J.T.S. 108**, a la pág. 9842. La idea es determinar si el Estado *"tiene adecuada justificación para continuar con un proceso judicial"*. *Pueblo v. Rivera Rodríguez,* ___ D.P.R. ___ (1995), **95 J.T.S. 36**, a la pág. 746. La determinación de si el acusado es inocente o culpable se hace en el juicio en sus méritos. *Del Toro v. E.L.A.,* ___ D.P.R. ___ (1994), **94 J.T.S. 119,** a la pág. 161.

En *Pueblo v. Andaluz Méndez, supra,* a las págs. 1293-1294, el Tribunal Supremo explicó que:

*"...el Ministerio Público debe presentar evidencia, legalmente admisible en un juicio plenario, sobre todos los elementos del delito imputado en la denuncia y su conexión con el imputado. [Citas omitidas]. La determinación de causa probable, una vez se cumple con la presentación de tal evidencia, goza de la presunción legal de corrección. [Citas omitidas]. Cuando el imputado entienda que el Ministerio Público no ha cumplido con su deber, el imputado puede atacar la determinación de causa probable y rebatir la presunción de corrección para la cual está disponible la moción de desestimación al amparo de la Regla 64 (p), ello cuando existe ausencia total de evidencia legalmente admisible en cuanto a alguno de los elementos del delito y la conexión del acusado con el delito imputado."* [Citas omitidas].

El *"quántum"* de prueba requerida en la vista preliminar, *"es una mera "scintilla" o un "mínimo de evidencia", Del Toro v. E.L.A., supra; Pueblo v. Vallone, supra,* no es necesario que el fiscal presente toda la evidencia que posee. El fiscal *"[n]o tiene que probar la culpabilidad del acusado más allá de toda duda razonable."* Por consiguiente, en la vista preliminar *"la credibilidad de los testigos está suspendida al quántum de prueba requerida en esa etapa". El Vocero v. E.L.A., supra,* a la pág. 9844. La declaración del agente Muñoz Martínez junto a la evidencia encontrada determina el mínimo de *quántum* de prueba necesario para establecer causa probable para acusar. En el juicio en su.fondo se determinará si el ministerio público tiene la prueba necesaria para probar más allá de duda razonable la culpabilidad de Héctor.

Por los fundamentos anteriormente expuestos se deniega la expedición del auto solicitado.

Notifíquese.

Lo acordó y ordena el Tribunal y certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 217

**1.** Véase el Exhibit II del Apéndice de la Petición de *Certiorari*, págs. 9-10.

**2.** Véase el Apéndice de la Petición de *Certiorari*, pág. 24.

**3.** Véase el Exhibit III, IV del Apéndice de la Petición de *Certiorari*, pág. 11-13.

**4.** Véase el Exhibit IV del Apéndice de la Petición de *Certiorari*, págs. 14-20.

**5.** Véase el Exhibit VI del Apéndice de la Petición de *Certiorari*, págs. 21-23.

**6.** Véase el Exhibit VII del Apéndice de la Petición de *Certiorari*, págs. 25-28.

**7.** Véase el Exhibit VIII del Apéndice de la Petición de *Certiorari*, págs. 29 -30.

8. Véase el Apéndice de la Petición de *Certiorari*, pág. 31.

9. Véase la Resolución emitida por este Tribunal de Circuito de Apelaciones, Panel de Bayamón, integrado por su Presidente, Juez Sánchez Martínez, y los Jueces Broco Oliveras y Urgell Cuebas.